**FILED**

MAR 0 4 2008

NANCY MAYER WHITTINGTON, CLERK
U S DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Department of Justice, Antitrust Division<br>325 7th Street, N.W., Suite 300<br>Washington, D.C. 20530,<br><br>     Plaintiff,<br><br>  v.<br><br>**BAIN CAPITAL, LLC**<br>111 Huntington Ave.<br>Boston, Massachusetts 02199,<br><br>and<br><br>**THOMAS H. LEE PARTNERS, L.P.**<br>100 Federal St. 35th Fl.<br>Boston, Massachusetts 02110,<br><br>and<br><br>**CLEAR CHANNEL<br>COMMUNICATIONS, INC.**<br>200 E. Basse Rd.<br>San Antonio, Texas 78209,<br><br>     Defendants. | Case: 1:08-cv-00245<br>Assigned To : Robertson, James<br>Assign. Date : 2/13/2008<br>Description: Antitrust |

### HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

## I.

### DEFINITIONS

As used in this Hold Separate Stipulation and Order ("Stipulation"):

A. "Bain" means Bain Capital, LLC, a Delaware limited liability company headquartered in Boston, Massachusetts, its directors, officers, partners, managers, employees, agents,

representatives, successors, and assigns; and its joint ventures, subsidiaries, partnerships, divisions, groups, affiliates, investment funds, hedge funds, and certain other private equity investment vehicles controlled or managed by Bain Capital Partners, LLC, and the respective directors, officers, general partners, managers, employees, agents, representatives, successors, and assigns of each.

B.      "THL" means Thomas H. Lee Partners, L.P., a Delaware limited partnership headquartered in Boston, Massachusetts, its directors, officers, partners, managers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, partnerships, divisions, groups, affiliates, investment funds, hedge funds, and certain other private equity investment vehicles controlled or managed by Thomas H. Lee Partners, L.P., and the respective directors, officers, general partners, managers, employees, agents, representatives, successors, and assigns of each.

C.      "Clear Channel" means Clear Channel Communications, Inc., a Texas corporation headquartered in San Antonio, Texas, its directors, officers, managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents and employees.

D.      "MSA" means Metro Survey Area.  A Metro Survey Area is a geographical area in which Arbitron, a radio industry survey company, collects listener data to aid radio stations, advertisers, and advertising agencies in evaluating radio audience size and composition.

E.      "Cincinnati" means the Cincinnati, Ohio MSA.

F.      "Houston" means the Houston/Galveston, Texas MSA.

G.      "Las Vegas" means the Las Vegas, Nevada MSA.

H.      "San Francisco" means the San Francisco, California MSA.

I.      "WLW" means the radio station WLW-AM located in Cincinnati owned by defendant Clear Channel.

-2-

J.    "WKFS" means the radio station WKFS-FM located in Cincinnati owned by defendant Clear Channel.

K.    "WOFX" means the radio station WOFX-FM located in Cincinnati owned by defendant Clear Channel.

L.    "WNNF" means the radio station WNNF located in Cincinnati owned by defendant Clear Channel.

M.    "KLOL" means the radio station KLOL-FM located in Houston owned by defendant Clear Channel.

N.    "KHMX" means the radio station KHMX-FM located in Houston owned by defendant Clear Channel.

O.    "KTBZ" means the radio station KTBZ-FM located in Houston owned by defendant Clear Channel.

P.    "KWID" means the radio station KWID-FM located in Las Vegas owned by defendant Clear Channel.

Q.    "KSJO" means the radio station KSJO-FM located in San Francisco owned by defendant Clear Channel.

R.    "Cincinnati Assets" means either (1) WLW and WKFS or, at the discretion of the defendants, (2) WOFX and WNNF.

S.    "Houston Assets" means either (1) KHMX or, at the discretion of the defendants, (2) KTBZ.

T.    "Houston Spanish-language Assets" means KLOL.

U.    "Las Vegas Spanish-language Assets" means KWID.

V.    "San Francisco Spanish-language Assets" means KSJO.

W.    "Clear Channel Assets" means, collectively, the Cincinnati Assets and the Houston Assets.

X.    "Clear Channel Spanish-language Assets" means, collectively, the Houston Spanish-

language Assets, the Las Vegas Spanish-language Assets, and the San Francisco Spanish-language Assets.

Y.    "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations of the Clear Channel Assets and the Clear Channel Spanish-language Assets, including, but not limited to: (i) all licenses, permits, authorizations, and applications therefor issued by the Federal Communications Commission ("FCC") and other government agencies related to the Clear Channel Assets and the Clear Channel Spanish-language Assets; (ii) all contracts (including programming contracts and rights), agreements, leases, and commitments and understandings of defendants relating to the operations of the Clear Channel Assets and the Clear Channel Spanish-language Assets; (iii) all interest in real property (owned or leased) relating to the transmitter facilities of the Clear Channel Assets and the Clear Channel Spanish-language Assets and all items of tangible property used in the operation of the Clear Channel Assets and the Clear Channel Spanish-language Assets at such transmitter facilities; (iv) all interest in the real property lease relating to the studios of the Clear Channel Assets and the Clear Channel Spanish-language Assets; (v) all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the Clear Channel Assets and the Clear Channel Spanish-language Assets; (vi) all interests in trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to the Clear Channel Assets and the Clear Channel Spanish-language Assets; (vii) all customer lists, accounts, and credit records relating to the Clear Channel Assets and the Clear Channel Spanish-language Assets; and (viii) all other records maintained by defendants in connection with the Clear Channel Assets and the Clear Channel Spanish-language Assets; however, assets that:  (a) are principally devoted to the operation of stations other than the Clear Channel Assets and the Clear Channel Spanish-language Assets or to the operation of their parent companies, and are not necessary to the operation of the Clear Channel Assets and the Clear Channel Spanish-language

Assets shall not be included within the Divestiture Assets; or (b) are part of a shared group of like assets (including, but not limited to, microphones and office supplies) shall be allocated to Clear Channel Assets and Clear Channel Spanish-language Assets, and thus to Divestiture Assets, only in proportion with their use by the Clear Channel Assets or the Clear Channel Spanish-language Assets.

Z.    "Acquirer" means the entity or entities to whom defendants divest any Divestiture Assets.

AA.    "Competitively sensitive information," includes non-public information relating to sales, marketing, current or future advertising and advertising rates, revenues, expenses and/or profitability information, affiliate relationships, program roll-out plans or talent contracts relating to any individual radio station asset.

## II.

### OBJECTIVES

The Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divestiture Assets for the purpose of preserving viable competition in the sale of radio advertising time in areas served by the Divestiture Assets to remedy the anticompetitive effects that the United States alleges would otherwise result from the acquisition of a substantial interest in Clear Channel by defendant Bain and defendant THL.  This Stipulation ensures that, prior to such divestiture, the Divestiture Assets will remain independent, economically viable, ongoing businesses, and that competition is maintained during the pendency of the ordered divestiture.

## III.

### JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action and over the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

**IV.**

COMPLIANCE WITH ENTRY OF FINAL JUDGMENT

A.      The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court.

B.      Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the closing of the transaction that is the subject of the proposed Final Judgment, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C.      Defendants shall not consummate the transaction sought to be enjoined by the Complaint before the Court has signed this Stipulation.

D.      This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.      In the event that: (1) the United States has withdrawn its consent, as provided in Paragraph IV(A), above; or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further

-6-

obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

F.      Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.

### HOLD SEPARATE PROVISIONS

Until the divestitures required by the Final Judgment has been accomplished:

A.      Within twenty (20) calendar days after the entry of this Stipulation, defendant Clear Channel will inform the United States of the steps the defendants have taken to comply with this Stipulation.

B.      While this Stipulation remains in effect, defendant Clear Channel shall, with respect to the Divestiture Assets, have the following obligations:

> 1.      to take all steps necessary to ensure that (i) the Clear Channel Assets will be maintained and operated as independent, ongoing, economically viable, and active competitors in the commercial radio broadcasting business; (ii) the Clear Channel Spanish- language Assets will be maintained and operated as independent, ongoing, economically viable, and active competitors in the commercial Spanish-language radio broadcasting business; (iii) the management of the Divestiture Assets, including the performance of decision-making functions regarding marketing and pricing, will be kept separate and apart from and not influenced by defendants Bain or THL or Clear Channel's other operations; and (iv) the books, records, competitively sensitive sales, marketing, and pricing information, and decision-making related to any of the Divestiture Assets will be kept separate and apart from defendants Bain and THL and Clear Channel's other operations;

2.      to use all reasonable efforts to maintain and increase sales of radio advertising time by the Divestiture Assets, and shall maintain at 2007 or previously approved levels for 2008, whichever are higher, all promotional advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets;

3.      to provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of Paragraphs V(A) and (B);

4.      to take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition, and to maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets;

5.      to maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

6.      to not transfer or reassign employees with primary responsibility for sales, marketing, and programming of the Divestiture Assets to any other radio station, except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policies, and to provide the United States with ten (10) days' notice of such transfer.

C.      The obligations enumerated in Paragraph V(B) apply to the San Francisco Spanish-language Assets unless and until those assets have been transferred to an FCC-authorized trust. Such obligations shall be suspended as to the San Francisco Spanish-language Assets if and when those assets have been transferred to an FCC-authorized trust.

D.      While this Stipulation remains in effect, defendants Bain and THL shall not use or attempt to use their ownership interest in Clear Channel to exert any influence over the operation of the Divestiture Assets.

E.      While this Stipulation remains in effect, defendants Bain and THL shall not have access to any Competitively Sensitive Information regarding any aspect of the operation of the Divestiture Assets, including any plans or proposals with respect thereto.

F.      Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, license, pledge, or otherwise dispose of any of the Divestiture Assets.

G.      Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

H.      Within ten (10) days of the filing of the Complaint, defendant Clear Channel shall appoint, subject to the approval of the United States, a person or persons to oversee the Divestiture Assets, who also will be responsible for defendants' compliance with this section.  This person or persons shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of the Final Judgment.  In the event that any such person is unable to perform his or her duties, defendant Clear Channel shall appoint, subject to the approval of the United States, a replacement within ten (10) working days.  Should defendant Clear Channel fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement at defendants' expense.

I.      Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to monitor and complete the divestiture pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

J.     This Stipulation shall remain in effect from the date of the closing of the transaction that is the subject of the Final Judgment until consummation of the divestitures required by the Final Judgment or until further order of the Court.

Dated: 2/13/08

FOR PLAINTIFF
UNITED STATES OF AMERICA:

Christopher M. Ries
Daniel McCuaig (D.C. Bar No. 478199)
United States Department of Justice
Antitrust Division, Litigation III Section
325 Seventh Street, N.W., Suite 300
Washington, DC 20530
(202) 307-0520

Respectfully submitted,

FOR DEFENDANT
BAIN CAPITAL, LLC and
DEFENDANT THOMAS H. LEE PARTNERS
L.P.:

James M. "Mit" Spears (D.C. Bar No. 428958)
Ropes & Gray LLP
700 12th Street, N.W.
Suite 900
Washington, DC 20005-3948
(202) 508-4681

FOR DEFENDANT
CLEAR CHANNEL COMMUNICATIONS,
INC.:

Phillip A. Proger (D.C. Bar No. 929596)
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
(202) 879-4668

ORDER

IT IS SO ORDERED by the Court, this ___ day of March 2008

United States District Court Judge

-11-