# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Department of Justice, Antitrust Division<br>325 7th Street, N.W., Suite 300<br>Washington, D.C. 20530,<br><br>               Plaintiff,<br><br><br>     v.<br><br>**BAIN CAPITAL, LLC**<br>111 Huntington Ave.<br>Boston, Massachusetts 02199,<br><br>and<br><br>**THOMAS H. LEE PARTNERS, L.P.**<br>100 Federal St. 35th Fl.<br>Boston, Massachusetts 02110<br><br>and<br><br>**CLEAR CHANNEL COMMUNICATIONS, INC.**<br>200 E. Basse Rd.<br>San Antonio, Texas 78209,<br><br>               Defendants. | Civil Action No. 08-0245 (JR)<br><br><br>**FILED**<br>JUL 2 9 2008<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Complaint on February 13, 2008, the United States and defendants Bain Capital, LLC ("Bain"), Thomas H. Lee Partners, L.P. ("THL"), and Clear Channel Communications, Inc. ("Clear Channel"), by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, 15. U.S.C. § 18.

## II. Definitions

As used in this Final Judgment:

A.    "Bain" means Bain Capital, LLC, a Delaware limited liability company headquartered in Boston, Massachusetts, its directors, officers, partners, managers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, partnerships, divisions, groups, affiliates, investment funds, hedge funds, and certain other private equity

investment vehicles controlled or managed by Bain Capital Partners, LLC, and the respective directors, officers, general partners, managers, employees, agents, representatives, successors, and assigns of each.

B.     "THL" means Thomas H. Lee Partners, L.P., a Delaware limited partnership headquartered in Boston, Massachusetts, its directors, officers, partners, managers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, partnerships, divisions, groups, affiliates, investment funds, hedge funds, and certain other private equity investment vehicles controlled or managed by Thomas H. Lee Partners, L.P., and the respective directors, officers, general partners, managers, employees, agents, representatives, successors, and assigns of each.

C.     "Clear Channel" means Clear Channel Communications, Inc., a Texas corporation headquartered in San Antonio, Texas, its directors, officers, managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents and employees.

D.     "Univision" means Univision Communications, Inc., a Delaware corporation headquartered in Los Angeles, California, its directors, officers, managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.     "BMP-Univision Holdings" means Broadcasting Media Partners, Inc., a Delaware corporation headquartered in New York that holds all of Univision's outstanding shares, its directors, officers, managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.     "CMP Susquehanna" means CMP Susquehanna Holdings, Corp., a Delaware corporation headquartered in Atlanta that is owned by Cumulus Media Partners, its directors, officers,

managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G.    "Cumulus Media Partners" means Cumulus Media Partners, LLC, a Delaware limited liability company headquartered in Atlanta, its directors, officers, managers, agents and employees, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

H.    "MSA" means Metro Survey Area. A Metro Survey Area is a geographical area in which Arbitron, a radio industry survey company, collects listener data to aid radio stations, advertisers, and advertising agencies in evaluating radio audience size and composition.

I.    "Cincinnati" means the Cincinnati, Ohio MSA.

J.    "Houston" means the Houston/Galveston, Texas MSA.

K.    "Las Vegas" means the Las Vegas, Nevada MSA.

L.    "San Francisco" means the San Francisco, California MSA.

M.    "WLW" means the radio station WLW-AM located in Cincinnati owned by defendant Clear Channel.

N.    "WKFS" means the radio station WKFS-FM located in Cincinnati owned by defendant Clear Channel.

O.    "WOFX" means the radio station WOFX-FM located in Cincinnati owned by defendant Clear Channel.

P.    "WNNF" means the radio station WNNF located in Cincinnati owned by defendant Clear Channel.

Q.    "KLOL" means the radio station KLOL-FM located in Houston owned by defendant Clear Channel.

R.    "KHMX" means the radio station KHMX-FM located in Houston owned by defendant

Clear Channel.

S.      "KTBZ" means the radio station KTBZ-FM located in Houston owned by defendant Clear

Channel.

T.      "KWID" means the radio station KWID-FM located in Las Vegas owned by defendant

Clear Channel.

U.      "KSJO" means the radio station KSJO-FM located in San Francisco owned by defendant

Clear Channel.

V.      "Cincinnati Assets" means either (1) WLW and WKFS or, at the discretion of the

defendants, (2) WOFX and WNNF.

W.      "Houston Assets" means either (1) KHMX or, at the discretion of the defendants, (2)

KTBZ.

X.      "Houston Spanish-language Assets" means KLOL.

Y.      "Las Vegas Spanish-language Assets" means KWID.

Z.      "San Francisco Spanish-language Assets" means KSJO.

AA.     "Clear Channel Assets" means, collectively, the Cincinnati Assets and the Houston Assets.

AB.     "Clear Channel Spanish-language Assets" means, collectively, the Houston Spanish-

language Assets, Las Vegas Spanish-language Assets, and San Francisco Spanish-language

Assets.

AC.     "Divestiture Assets" means all of the assets, tangible or intangible, used in the operations

of the Clear Channel Assets and the Clear Channel Spanish-language Assets, including, but not

limited to: (i) all licenses, permits, authorizations, and applications therefor issued by the Federal

Communications Commission ("FCC") and other government agencies related to the Clear

Channel Assets and the Clear Channel Spanish-language Assets; (ii) all contracts (including

programming contracts and rights), agreements, leases, and commitments and understandings of

defendants relating to the operations of the Clear Channel Assets and the Clear Channel Spanish-

language Assets; (iii) all interest in real property (owned or leased) relating to the transmitter facilities of the Clear Channel Assets and the Clear Channel Spanish-language Assets and all items of tangible property used in the operation of the Clear Channel Assets and the Clear Channel Spanish-language Assets at such transmitter facilities; (iv) all interest in the real property lease relating to the studios of the Clear Channel Assets and the Clear Channel Spanish-language Assets; (v) all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the Clear Channel Assets and the Clear Channel Spanish-language Assets; (vi) all interests in trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to the Clear Channel Assets and the Clear Channel Spanish-language Assets; (vii) all customer lists, accounts, and credit records relating to the Clear Channel Assets and the Clear Channel Spanish-language Assets; and (viii) all other records maintained by defendants in connection with the Clear Channel Assets and the Clear Channel Spanish-language Assets; however, assets that: (a) are principally devoted to the operation of stations other than the Clear Channel Assets and the Clear Channel Spanish-language Assets or to the operation of their parent companies, and are not necessary to the operation of the Clear Channel Assets and the Clear Channel Spanish-language Assets shall not be included within the Divestiture Assets; or (b) are part of a shared group of like assets (including, but not limited to, microphones and office supplies) shall be allocated to Clear Channel Assets and Clear Channel Spanish-language Assets, and thus to Divestiture Assets, only in proportion with their use by the Clear Channel Assets or the Clear Channel Spanish-language Assets.

AD.    "Clear Channel Divestiture Assets" are the Divestiture Assets relating to the Clear Channel Assets.

AE.    "Clear Channel Spanish-language Divestiture Assets" are the Divestiture Assets relating to the Clear Channel Spanish-language Assets.

AF.    "Acquirer" means the entity or entities to whom defendants divest any Divestiture Assets.

### III. Applicability

A.    This Final Judgment applies to THL, Bain, and Clear Channel, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the acquirers of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.    Defendant Clear Channel is ordered and directed to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion, within ninety (90) calendar days from the date of the closing of the transaction that is the subject of the Final Judgment or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed in total sixty (60) calendar days, and shall notify the Court in each such circumstance.  If, within the period permitted for divestitures, defendants have filed applications with the FCC seeking approval to assign or transfer licenses to the Acquirer(s) (previously approved by the United States, pursuant to the terms of this paragraph) of the Clear Channel Assets and the Clear Channel Spanish-language Assets, but an order or other dispositive action by the FCC on such applications has not been issued before the end of the period permitted for divestitures, the period shall be extended with respect to divestiture of those Clear Channel Assets and Clear Channel Spanish-language Assets for which FCC final approval has not been issued until ten (10) calendar days after such

approval is received.  Defendant Clear Channel agrees to use its best efforts to divest the Divestiture Assets, and to obtain all regulatory approvals necessary for such divestitures, as expeditiously as possible.

B.     The Divestiture Assets shall not include the Clear Channel Assets if, prior to the completion of the divestitures required by this Final Judgment, both THL and Bain no longer have any have limited liability company membership or any type of debt, equity governance, or other beneficial interest in either Cumulus Media Partners or CMP Susquehanna, and have provided written certification (and supporting documentation) satisfactory to the United States that they have divested all such assets.

C.     The Divestiture Assets shall not include the Clear Channel Spanish-language Assets if, prior to the completion of the divestitures required by this Final Judgment, defendant THL no longer has any shares of capital stock or any type of debt, equity, governance, or other beneficial interest in either BMP-Univision Holdings or Univision, and has provided written certification (and supporting documentation) satisfactory to the United States that it has divested all such assets.

D.     The obligation to divest the San Francisco Spanish-language Assets shall be suspended if, prior to the completion of the divestitures required by this Final Judgment, those assets have been transferred to an FCC-authorized trust, and shall cease if such assets are sold under the terms of the FCC-authorized trust.

E.     In accomplishing the divestitures ordered by this Final Judgment, defendant Clear Channel promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Defendant Clear Channel shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and

documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendant Clear Channel shall make available such information to the United States at the same time that such information is made available to any other person.

F.      Defendant Clear Channel shall provide to the Acquirer or Acquirers and the United States information relating to personnel involved in the operation of the Divestiture Assets to enable the Acquirer or Acquirers to make offers of employment. Defendants shall not interfere with any negotiations by the Acquirer or Acquirers to employ any Clear Channel employee whose primary responsibility is the operation of the Divestiture Assets.

G.      Defendant Clear Channel shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

H.      Defendant Clear Channel shall warrant to the Acquirer or Acquirers that each of the assets will be operational on the date of sale.

I.      Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

J.      Defendant Clear Channel shall warrant to the Acquirer or Acquirers that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

K.      Unless the United States otherwise consents in writing, any divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire

Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion that (i) the Clear Channel Assets can and will be used by the Acquirer or Acquirers as part of viable, ongoing businesses engaged in ongoing commercial radio broadcasting; (ii) the Clear Channel Spanish-language Assets can and will be used by the Acquirer or Acquirers as part of viable, ongoing businesses engaged in ongoing commercial Spanish language radio broadcasting; (iii) that the Divestiture Assets will remain viable; and (iv) that the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The sale of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

1.    shall be made to an Acquirer or Acquirers that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in the either the commercial radio broadcasting business (for the Cincinnati Assets and the Houston Assets) or the commercial Spanish-language radio broadcasting business (for the Houston Spanish-language Assets, the Las Vegas Spanish-language Assets, and the San Francisco Spanish-language Assets); and

2.    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer or Acquirers and defendant Clear Channel gives defendant the ability to unreasonably raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V. Appointment of Trustee

A.    If defendant Clear Channel has not divested the Divestiture Assets within the time period specified in Paragraph IV(A), defendants shall notify the United States of that fact in writing.

Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, and are reasonably necessary in the trustee's judgment to assist in the divestiture.

C.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objection by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of the defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to the defendants and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.      Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture.  The trustee and any consultants, accountants, attorneys, and other persons retained by

the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and the defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secrets or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.      After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six months after its appointment, the trustee shall promptly file with the Court a report setting forth:  (1) the trustee's efforts to accomplish the required divestiture; (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished; and (3) the trustee's recommendations.  To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment,

which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. Notice of Proposed Divestitures

A.      Within two (2) business days following execution of a definitive divestiture agreement, defendant Clear Channel or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestitures required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture(s) and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from the defendants, the proposed Acquirer or Acquirers, any other third party, or the trustee, if applicable, additional information concerning the proposed divestitures, the proposed Acquirer or Acquirers, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer or Acquirers, any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture(s). If the United States provides written notice that it does not object, the divestitures may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon

objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by defendant Clear Channel under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII.  Preservation of Assets/Hold Separate

Until the divestitures required by this Final Judgment have been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX.  Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of their compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to any prospective Acquirer, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information

provided by defendants, including limitations on the information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.     Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.     Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

### X. Compliance Inspection

A.     For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

1.     access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

2.     to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by any defendant.

- 15 -

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If, at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

### XI. No Reacquisition

A.      As long as defendant Bain has any limited liability company membership or debt, equity, governance, or other beneficial interest in Clear Channel and either Cumulus Media Partners or CMP Susquehanna, defendants Bain and Clear Channel may not reacquire any part of the Clear Channel Divestiture Assets nor enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement with respect to the Clear Channel Divestiture Assets.

B.      As long as defendant THL has any limited liability company membership or debt, equity, governance, or other beneficial interest in Clear Channel and either Cumulus Media Partners or CMP Susquehanna, defendants THL and Clear Channel may not reacquire any part of the Clear

Channel Divestiture Assets nor enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement with respect to the Clear Channel Divestiture Assets.

C.    As long as defendant THL has any limited liability company membership or debt, equity, governance, or other beneficial interest in Clear Channel and either Univision or BMP-Univision Holdings, defendants THL and Clear Channel may not reacquire any part of the Clear Channel Spanish-language Divestiture Assets nor enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement with respect to the Clear Channel Spanish-language Divestiture Assets.

D.    If defendants Bain and THL satisfied the requirements of Paragraph IV(B) of this Final Judgment and thus did not divest the Clear Channel Assets, no defendant may, so long as Bain or THL has any limited liability company membership or debt, equity, governance, or other beneficial interest in Clear Channel, acquire any beneficial interest in either Cumulus Media Partners or CMP Susquehanna nor enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement between Clear Channel and Cumulus Media Partners or CMP Susquehanna with respect to radio stations in Cincinnati or Houston.

E.    If defendant THL satisfied the requirements of Paragraph IV(C) of this Final Judgment and thus did not divest the Clear Channel Spanish-language Assets, neither THL nor Clear Channel may, so long as THL has any limited liability company membership or debt, equity, governance, or other beneficial interest in Clear Channel, acquire any beneficial interest in either BMP-Univision Holdings or Univision nor enter into any local marketing agreement, joint sales agreement, or any other cooperative selling arrangement between Clear Channel and BMP-Univision or Univision with respect to radio stations in Houston, Las Vegas, or San Francisco.

### XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out

or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIII.   Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XIV.   Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _July 29, 2008_

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16:

_____
United States District Judge